**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
SCOTT MACINTOSH               )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No. 03-1113
                              )              (EGS)
BUILDING OWNERS AND MANAGERS  )
ASSOCIATION INTERNATIONAL;    )
HENRY CHAMBERLAIN; and RON    )
BURTON                        )
          Defendants.         )
_____)
```

**AMENDED MEMORANDUM OPINION**[1]

**I. Introduction**

Plaintiff Scott MacIntosh ("MacIntosh"), a Canadian citizen, brings claims against his former employer alleging violations of the D.C. Human Rights Act, violations of 42 U.S.C. § 1981, wrongful termination, and breach of contract. Defendants are Building Owners and Managers Association International ("BOMA"), an Illinois non-profit corporation authorized to do business in

---

[1] This Memorandum Opinion, and specifically Section IV.B. herein, amends and clarifies the Court's discussion found in Section III.B. of the Court's Memorandum Opinion of March 30, 2004, published at 310 F. Supp. 2d 240. This Amended Opinion in no way affects the Order of March 30, 2004, denying Defendant Building Owners and Managers Association International's Motion to Dismiss as to Counts I, II, and III and granting as to Count IV and denying Defendants Henry Chamberlain and Ron Burton's Motion to Dismiss as to Counts I and II and granting as to Counts III and IV.

1

the District of Columbia, Henry Chamberlain ("Chamberlain"), Executive Director of BOMA, and Ron Burton ("Burton"), Vice President of Advocacy and Research for BOMA.  The claims against Chamberlain and Burton are in their individual capacities.

## II. Factual Background

Plaintiff was employed by BOMA from January 1999 to October 2002 pursuant to a TN visa, allowing plaintiff, a non-citizen, to work in the United States.  While employed at BOMA, plaintiff, who was Director of Research, received two performance ratings of "very good" and one performance rating of "outstanding."

In January 2002, plaintiff learned that BOMA had failed to make its December 2001 401-K payment.  Plaintiff brought this information to the attention of Defendant Ron Burton.  Burton spoke with Ellen Hobby, Vice President of Finance and Administration, who informed Burton that BOMA had until the end of January to make its payment.  Plaintiff, believing Hobby to be incorrect, found the Labor Department Regulation indicating that the payment should have been made the previous month and showed the regulation to Burton.  In response, Burton sent an email to several employees explaining why the payments had not been made and asking that employees not spend their time listening to office gossip.

In February 2002, plaintiff sent Dora Blacknall, an African-

American employee under his supervision, to Hobby to collect a paycheck for Sparkle Mitchell, another female African-American employee who had not been paid in a timely fashion under the Wage and Hour Laws.  When she returned, Blacknall appeared upset.  Plaintiff believes that Blacknall had been mistreated on account of her race.  Plaintiff claims that no African-American employee in BOMA's Washington office has reached a rank higher than that of manager.  He maintains that discrimination on the basis of race and gender were "hallmarks" of BOMA's employment practices.

Plaintiff sent Burton a written note complaining about the incident.  Burton purportedly responded by accusing plaintiff of asserting that BOMA had committed improprieties in performing its contract with the EPA.

In late April 2002, Burton and Hobby approached plaintiff in his office and pressured him to fraudulently inflate BOMA's expenses under a government contract with the EPA.  Plaintiff refused to comply with their request.  On May 6, 2002, Defendant Henry Chamberlain fired plaintiff.  BOMA's official statement indicated that plaintiff had resigned.

Plaintiff has alleged that the actions of Defendants BOMA, Chamberlain, and Burton violate both 42 U.S.C. § 1981 and the D.C. Human Rights Act, D.C. Code § 2-1402 *et seq.* (2001) (hereinafter "DCHRA") and constitute wrongful termination as well as breach of an employment contract.

BOMA and the individual defendants have each filed a Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

### III. Standard of Review

When considering a Motion to Dismiss, the Court construes the facts in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002).  A Motion to Dismiss is granted and the complaint dismissed only if no relief could be granted on those facts.  *See Sparrow v. United Air Lines Inc.,* 216 F.3d 1111, 1114 (D.C. Cir. 2002) (stating that complaints "need not plead law or match facts to every element of a legal theory") (quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)).

### IV. Discussion

The Court will address the federal claims first, and then the local claims, since the interpretation of the federal claims will impact the interpretation of the local claims.

**A. Plaintiff's Section 1981 Claims**

<u>1. Section 1981 Claims Against BOMA</u>

Plaintiff alleges that he was fired for protesting the

4

treatment of female African-American employees at BOMA, a "protected activity" under § 1981.  Compl. at ¶ 25.

BOMA's principal contention is that a plaintiff in a § 1981 action must be a member of a racial minority.  However, courts have roundly rejected defendant's position.  In *DeMatteis v. Eastman Kodak Co.*, a white plaintiff brought suit under § 1981, alleging that he had been forced into early retirement after he sold his house, which was located in an area inhabited by many Kodak employees, to an African-American.  511 F.2d 306 (2d Cir. 1975).  Relying on a Supreme Court case in which the Court had held that a non-minority who attempts to vindicate the right of a member of a minority group has standing to sue under § 1982, the Second Circuit reversed the district court's grant of summary judgment in favor of the defendant.  *Id.* at 312 (citing *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237 (1969)).  Two other circuits have reached the same conclusion. *See Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir. 1986) (holding that the Caucasian wife of an Iranian man, who alleged that she had been fired because of the race of her husband, had a cause of action under § 1981); *Winston v. Lear-Siegler, Inc.*, 50 F.2d 1266, 1270 (6th Cir. 1977) (holding that a white employee had standing under § 1981 to sue former employer for discharging him in alleged retaliation for the employee's protesting the supposedly discriminatory firing of an African-American co-

5

worker).

Although the D.C. Circuit has not directly addressed the question of whether a non-minority plaintiff has standing to sue under § 1981, Magistrate Judge Facciola confronted the issue in *Glymph v. District of Columbia*. 211 F. Supp. 2d 152 (D.D.C. 2002). In *Glymph*, the district court had already rejected the defendants' partial Motion to Dismiss but, noting that the briefs were inadequate, referred the question of whether the plaintiff's race prevented her from stating a valid claim to Magistrate Judge Facciola. Citing *DeMatteis* and its progeny with approval, Magistrate Judge Facciola concluded that the best approach to allegations of racially motivated retaliatory action was "that the race-based element must lie in the protected activity, not in the race of the plaintiff." *Id.* at 154.

The Court sees no reason to question Magistrate Judge Facciola's reasoning, which is in accord with the three circuits that have addressed this precise issue. Because § 1981 appears not to preclude suit by a non-minority who attempts to vindicate the rights of a member of a racial minority, plaintiff has alleged enough in his complaint to survive a Motion to Dismiss. Therefore, Defendant BOMA's Motion to Dismiss Count II of the complaint is denied.

<u>2. Section 1981 Claims against Chamberlain and Burton</u>

Defendants Chamberlain and Burton argue, as did BOMA, that

plaintiff's § 1981 claims fail as a matter of law because plaintiff is not a member of a racial minority.  Having disposed on that argument previously, the Court turns to the question of whether the individual defendants can be sued under § 1981 in their individual capacities.

An examination of recent case law reveals that defendants in a § 1981 suit can be held liable in their individual capacities. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 33 (D.D.C. 1999); *see also Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986) (holding that individuals personally involved in the discriminatory action may be held liable); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 541 (D.N.J. 2000) (citing *Sheppard* and *Al-Khazraji* in holding defendants liable in their individual capacities).  In *Sheppard*, the court noted that Title VII was intended "to address discriminatory conduct in the workplace only," that the language of Title VII covered only employers, and that the reach of § 1981 was clearly much broader.  The court thus held that individual supervisors could be sued under § 1981, even if they could not be sued under Title VII.  59 F. Supp. 2d at 33.

Even if, as the Third Circuit observed in *Al-Khazraji*, defendants must have "authorized, directed, or participated in the alleged discriminatory conduct" in order to be liable in their individual capacities, plaintiff has alleged enough facts

in his complaint to survive a Motion to Dismiss for failure to state a claim. 784 F.2d at 518. Construing all inferences in favor of plaintiff, the Court denies Defendants Chamberlain and Burton's Motion to Dismiss Count II.

### B.   Plaintiff's District of Columbia Human Rights Act Claims

In Count I of his complaint, plaintiff brings a claim against the three defendants pursuant to the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.* (2001) ("DCHRA"). The individual defendants, Chamberlain and Burton, urge the Court to dismiss the DCHRA claims against them, arguing that supervisors cannot be individually liable for discrimination under the DCHRA.

In *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, et al., 715 A.2d 873 (D.C. 1998), the plaintiff, a former associate in a law firm, brought wrongful discharge and discrimination claims against the firm and three of the firm's partners, pursuant to the DCHRA. *Id.* at 886. The trial court found that the partners were not amenable to suit in their individual capacities and dismissed the complaint against the partners. *Id.* at 887.

The District of Columbia Court of Appeals reversed. The appellate court noted that the DCHRA, which prohibits employers from discriminating against employees, defines "employer" as

> any person who, for compensation, employs an
> individual, except for the employer's parent,
> spouse, children or domestic servants,

8

>           engaged in work in and about the employer's
>           household; *any person acting in the interest
>           of such employer, directly or indirectly*; and
>           any professional association.

*Id.* at 887-88 (*citing* D.C. Code § 1-2502(10)(1992) [now codified at D.C. Code § 2-1401.02(10)(2001)]).

The appellate court also observed that the DCHRA makes it unlawful for a person to "aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the [DCHRA] or to attempt to do so." *Id.* at 888 (*citing* D.C. Code § 1-2526 (1992) [now codified at D.C. Code § 2-1402.62 (2001)]). "The presence in the Human Rights Act of the proscription against aiding and abetting refutes the partner-defendants' contention that the Act 'imposes liability only on the employing entity.'" *Id.*

Based on these two aspects of the statute, first the inclusion of "any person acting in the interests of the employer" in the definition of "employer" and second the prohibition against aiding, abetting, inviting or coercing discrimination forbidden under the DCHRA, the D.C. Court of Appeals concluded that the partners were amenable to suit in their individual capacities for alleged violations of the DCHRA. *Id.* at 889.

Thus, because the law in the District of Columbia prohibits employer discrimination and provides for individual liability pursuant to the DCHRA and because therefore plaintiff's claims are not claims on which no relief can be granted, the Motions to Dismiss Count I filed by Defendants BOMA, Chamberlain, and Burton

9

are denied.

**C.  Plaintiff's Claim for Wrongful Termination**

<u>1. Wrongful Termination Against BOMA</u>

In Count III of his complaint, plaintiff alleges that he was fired for refusing to fraudulently inflate BOMA's expenses under a government contract with the EPA.  Compl. at ¶ 18.

In *Adams v. George W. Cochran & Co., Inc.*, the D.C. Court of Appeals held that an at-will employee could "sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law."  597 A.2d 28, 34 (D.C. 1991).  The Court of Appeals later expanded *Adams* in holding that courts could find further public policy exceptions to the at-will presumption.  *Carl v. Children's Hospital*, 702 A.2d 159, 161 (D.C. 1997); *see id.* at 164 (Terry, J., concurring).  In *Carl*, the concurring judges stated that a plaintiff seeking to invoke the exception must point to "a clear mandate of public policy" as embodied "in a statute or municipal regulation, or in the Constitution."  *Id.*

BOMA contends that plaintiff has not pointed to any specific statute or regulation and has thus failed to establish a "clear mandate of public policy" justifying an exception to the at-will doctrine.  In response, plaintiff identifies a federal statute, the False Claims Act, 31 U.S.C. § 3729(a) (2000), that

10

criminalizes using false records or documents to induce the Government to pay a fraudulent claim. Because plaintiff alleged that BOMA fired him for refusing to inflate BOMA's contractor expenses, plaintiff has pointed to a clear mandate of public policy as expressed in a federal criminal statute, satisfying both the broad standard announced in *Carl* and the narrower rule from *Adams*. *See Carl*, 702 A.2d at 161-64.

BOMA further argues that plaintiff had to identify the specific statute in his initial complaint in order to survive a Motion to Dismiss. *See Riggs v. Home Builders Institute*, 203 F. Supp. 2d 1, 11 (D.D.C. 2002). Nowhere in its opinion, however, does the *Riggs* court hold that the plaintiff must include citations to the statute or regulation on which she relies in the initial complaint. On the contrary, the court discussed the "liberal standard" of Federal Rules of Civil Procedure 8, emphasizing the commitment to construe the pleadings so as to do "substantial justice." *Id.* at 12 (citing Fed. R. Civ. P. 8(f)). Although the defendant correctly observes that the plaintiffs in the exceptions recognized by the D.C. Court of Appeals all cited particular statutes and regulations in their complaints, the courts in those cases did not discuss how they would have ruled had the plaintiff alleged only the underlying facts and not provided a citation. Moreover, the Rule 12(b)(6) standard instructs that a claim should be dismissed only if there are no

facts that would entitle the plaintiff to relief.

Because plaintiff does not need to cite the statute or regulation that he believes embodies a clear mandate of public policy in his complaint and because plaintiff has made the allegation that he was instructed to inflate expenses under a government contract, which is clearly against the law, the Court denies Defendant BOMA's Motion to Dismiss Count III.

### 2. Wrongful Termination Against Chamberlain and Burton

Plaintiff concedes that he cannot maintain a wrongful discharge claim against Chamberlain and Burton.  Pl.'s Opp. at 16.  Instead, plaintiff asks the Court to read this Count as alleging intentional interference with contract relations. However, as plaintiff acknowledges, he can maintain this new claim only if the Court finds that BOMA breached its contract with him.  *Id.*  As will be discussed below, plaintiff did not have an employment contract with BOMA.

Because the plaintiff was not under contract with BOMA at the time Defendants Chamberlain and Burton allegedly tortiously interfered with contract relations, the Court grants Defendants Chamberlain and Burton's Motion to Dismiss Count III.

### D.  **Plaintiff's Claim for Breach of Contract**

Plaintiff's complaint alleges that he understood that he was to be employed until at least October 6, 2002.  Plaintiff implies

that an employment contract with BOMA was established because BOMA listed the October 6, 2002 date in representations to the Immigration and Naturalization Service ("INS") through which plaintiff obtained his visa.  Defendants rely on the well-established presumption in favor of at-will employment and note that plaintiff has not indicated any document or conversation in which the parties formed a contract.

Construing the facts in the light most favorable to plaintiff, the only question is whether an employer's representations, when made in order to secure an employment visa for a prospective employee, constitute a contract.  In a factually similar case, the Seventh Circuit held that an employer's petition to the INS representing its intention to employ someone for a fixed term constituted neither a contract nor a promise on which one could reasonably rely.  *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1223-24 (7th Cir. 1991).  In *Geva*, the defendant company submitted a petition to the INS describing the plaintiff's qualifications, the company's needs, as well as the salary and benefits to be awarded and the anticipated duration of the employment.  *Id.* at 1222.  The court rejected the plaintiff's attempts to show that an oral contract had existed.  *Id.* at 1223-24; *see also Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1163 (9th Cir. 2003) (rejecting the contention that employee's e-mailed acceptance of telephone offer

of fixed-term employment formed a contract).

Because there is a strong presumption in favor of at-will employment and because an employer's representations to the INS during the solicitation of a visa, standing alone, do not comprise an enforceable contract, the Court grants defendants' Motion to Dismiss Count IV.

### V. Conclusion

Defendants make a persuasive case for dismissing all counts of the complaint, and plaintiff does little to rebut defendants' legal arguments.  However, the Court's independent research has answered many of the doubts about the soundness of plaintiff's claims, at least to the point where, when construing all facts in favor of plaintiff, some counts are sufficient to survive defendants' Rule 12(b)(6) Motion to Dismiss.

Pursuant to the March 30, 2004 Order, defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. _____

### VI. Order

On March 30, 2004, this Court entered an Order in this case denying Defendant Building Owners and Managers Association International's Motion to Dismiss with respect to Counts I, II, and III and granting with respect to Count IV and denying Defendants Henry Chamberlain and Ron Burton's Motion to Dismiss

with respect to Counts I and II and granting with respect to Counts III and IV.  In the Memorandum Opinion accompanying that Order, published at 310 F. Supp. 2d 240, the Court misstated the current state of the law regarding individual liability under the D.C. Human Rights Act.  Having since received a Motion to Reconsider from the plaintiff and the benefit of an *amicus curaie* brief filed by the Metropolitan Washington Employment Lawyers Association, the Court finds that certain changes to the discussion of that issue in the March 30, 2004 Opinion are in order.  Accordingly, it is hereby **ORDERED** that this amended Opinion, dated January 11, 2005 and attached hereto, shall replace and supersede the Opinion of March 30, 2004.  This action in no way affects the Order of March 30, 2004, denying in part and granting in part Defendants' Motion to Dismiss.