UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT MACINTOSH,<br><br>    Plaintiff,<br><br>v.<br><br>BUILDING OWNERS AND MANAGERS ASSOCIATION INTERNATIONAL, *et al.*,<br>    Defendants. | Civil Action No. 03-1113 (JMF/EGS) |

MEMORANDUM OPINION

This case is before me for resolution of all outstanding discovery disputes. Currently pending and ready for resolution are several motions. Although I will reserve issuing my final ruling until a later date, herein I will partially resolve <u>Plaintiff's Motion to Set Aside Claims of Privilege and Work Product Protection and Memorandum in Support</u> and <u>Plaintiff's Motion to Compel Responses to Discovery Requests and Memorandum in Support</u>.

INTRODUCTION

In this Title VII action, a significant controversy has arisen as to a note in the handwriting of the defendant, Ron Burton, apparently commemorating a conversation he had with counsel for the Building Owners and Managers Association International ("BOMA'). Plaintiff, Scott MacInstosh, claims that he found Burton's note lying on a copying machine while Burton claims that he first "buried" his note among papers on his desk in his office but then put it in his briefcase, where it remained until this lawsuit was filed. At that point, Burton claims he turned it over to BOMA counsel.

After reviewing the parties' papers, I have concluded that I can only resolve the controversy after an evidentiary hearing. Plaintiff's motion to compel proceeds upon the presumption that all parties are agreed that plaintiff inadvertently found the note. Defendants make no such concession. Obviously, I will not speak to the discovery issues raised by the note until I hold a hearing and make findings of fact. In the meanwhile, however, I can resolve the other issues raised by plaintiff's motion.[1]

## DISCUSSION

I.   Plaintiff's Interrogatories to BOMA

   A.   Interrogatories 1 & 2

Plaintiff's first interrogatory asked BOMA to identify all persons who had knowledge of the facts alleged in the complaint. Plaintiff's second interrogatory asked BOMA to identify those individuals who had knowledge of the allegations in three specific paragraphs.[2]

In response to Interrogatory 1, BOMA named certain persons and indicated that they had information "relating to Plaintiff's employment with and/or separation from BOMA as well as information relating to the 401k plan." Opp. Exhibit 5 at 3. BOMA then supplemented that answer by naming additional persons and noted that one of them, Wayne Smithies, had specific information as to a particular matter.

As to interrogatory 2, BOMA ultimately answered it by indicating that four of the persons

---

[1] Note that I include the controversy concerning plaintiff's Request for Admission 41, demanding that defendants admit that an exhibit is a true and accurate copy of Burton's notes.

[2] All other controversies as to these two interrogatories have been resolved by Defendant BOMA's Third Supplemental Answers to Plaintiff's First Set of Interrogatories. Those answers are Exhibit 5 to Defendants Building Owners and Managers Association, Henry Chamberlain and Ron Burton's Opposition to Plaintiff's Motion to Compel. I shall refer to the latter as "Opp."

it named in response to Interrogatory 1 had specific information as to the three paragraphs of the complaint that plaintiff specified in propounding Interrogatory 2.  Additionally, BOMA incorporated by reference those persons it originally identified in its Initial Disclosures.  Thus, plaintiff now knows everyone that BOMA believes has information about the allegations of the complaint and which of those individuals has specific information about the three specified paragraphs.  Although plaintiff complains that the answers are somehow insufficient, I see no basis whatsoever for his complaint and I will not order any further supplementation.

  B. <u>Interrogatory 5</u>

In this interrogatory, plaintiff sought the identification of any disclosure or report made to a BOMA supervisor that involved assertions of racially or ethnically offensive conduct or remarks.  BOMA answered that the fact that plaintiff filed this lawsuit was disclosed to the BOMA Executive Committee but that it was not aware of "any other 'disclosures' or 'reports' from any employees relating to ethnically or racially offensive conduct through the date of Mr. MacIntosh's departure." Opp., Exhibit 5 at 6.  It would seem that the matter would end there, but in its opposition, BOMA, after noting that the existence of the lawsuit was made known to the BOMA Board of Directors, stated: "Any investigation into Mr. MacIntosh's claims occurring after the lawsuit commenced is most certainly privileged, and Mr. MacIntosh does not argue otherwise." Opp. at 12.  For his part, plaintiff challenges any claim of privilege as to any investigation. <u>Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Compel</u> at 7-9.

Since BOMA speaks hypothetically as to a possible investigation, I do not know whether it is making a specific privilege claim as to an investigation that was actually conducted.  Lest I chase a will-o'-the-wisp, I will order BOMA to file, in camera and under seal, a declaration from

a person authorized to speak for the company indicating whether any investigation into MacIntosh's claims was conducted, the names of the persons who conducted it, and what its results were. BOMA shall also file, in camera and under seal, any documents that were either created during the investigation or as a result of it and all documents considered by the persons who conducted the investigation. Once I am more fully informed, I will determine whether additional briefing is necessary.

    C.    <u>Interrogatory 7</u>

This interrogatory pertains to Burton's handwritten note described above and I will not speak to it until I conduct the hearing.

II.    <u>Request for Production of Documents</u>

    A.    <u>Personnel Files</u>

Plaintiff seeks the personnel files of Henry Chamberlain, Ron Burton and Ellen Hobby. BOMA, in accordance with my decision in <u>Waters v. United States Capitol Police Bd.</u>, 216 F.R.D. 153 (D.D.C. 2003), indicates that it will produce any documents, including performance reviews, that "suggest dishonesty, untruthfulness, racism, or retaliation or documents reflecting salary adjustments for the six months after Mr. MacIntosh's departure." Opp. at 17.

Not satisfied, plaintiff still insists that he is entitled to entire personnel files to search for evidence that other BOMA employees did the same things as MacIntosh but were not treated the same way. He does not tender any reason to believe that Chamerlain, Burton and Hobby did what he did but were treated differently. Moreover, while it may be legitimate to ask for specific information from a personnel file to see if persons in similar situations were treated differently from MacIntosh, it does not follow that the entire personnel file has to be produced. That, after

all, is the precise point of the Waters decision: a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove his case.

   B.  Financial Records

Plaintiff seeks BOMA's income and balance sheets for calendar years 2001 and 2002, and for each quarter within those two years. Plaintiff also seeks BOMA's current income statement. He has already been provided with BOMA's tax returns for 2001, 2002 and 2003 but he claims that he needs the additional data to show that BOMA's motivation in allegedly pressuring him to inflate expenses on a contract with an agency of the United States and in delaying the making of a 401(k) payment was its poor financial condition. Plaintiff fails, however, to address either why the tax returns he has will not suffice and why only the income and balance sheets will, or why he needs financial information for periods other than the periods in question. After all, it was during those periods that MacIntosh claims to have been pressured into inflating expenses and when he claims that BOMA delayed in processing one of his 401(k) payments.

   C.  Request to Produce 41

As to certain documents responsive to this request, including an e-mail from Wayne Smithies, dated May 8, 2002, to other BOMA employees and officers, BOMA asserted the work product and attorney-client privileges. BOMA indicates that it has no objection to my review of the e-mail to ascertain whether it was privileged. I therefore take it that BOMA has no objection to my review of all documents on its privilege log. Given the small number of documents at issue and my well-documented problems[3] in attempting to rule on privilege questions solely on

---

[3] See e.g. Marshall v. District of Columbia Water and Sewage Auth., 214 F.R.D. 23, 25 n.4 (D.D.C. 2003).

the basis of a privilege log, I will order BOMA to produce all documents claimed to be privileged on its privilege log for my in camera inspection.

III.     Request for Production of Documents Made of Burton and Chamberlain

On October 19, 2004, plaintiff propounded seven requests for production of documents directly upon defendants Ron Burton and Henry Chamberlain.  In some of their responses, Burton and Chamberlain claimed the attorney-client and work product privileges. On October 28, 2004, counsel for BOMA, who also represents Burton and Chamberlain individually, sent plaintiff's counsel a document entitled Defendants Building Owners and Managers Association, Ron Burton and Henry Chamberlain's Revised Privilege Log. Opp., Exhibit 10.  Despite the caption of the document, clearly identifying the document as the privilege log of BOMA and of Ron Burton and Henry Chamberlain, plaintiff complains that Burton and Chamberlain did not file a privilege log in a timely fashion.  That assertion is mistaken; the caption of the document indicates that the document is the privilege log of BOMA, Burton and Chamberlain.  Furthermore, the documents at issue were created by Burton and Chamberlain in the course of the performance of their duties for BOMA.  The assertion of the privilege by BOMA suffices to force the adjudication of the privilege claim, whether or not Burton or Chamberlain also asserted the privilege independently.  I do not see how anything Burton and Chamberlain did as individuals could waive a privilege claimed by their employer when all of them are separate parties to this lawsuit.

An Order accompanies this Memorandum Opinion.

                                                                    _____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: